UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MAX A. CHIZUM, )
 )
      Plaintiff, )
 )
v. ) CAUSE NO. 3:09cv527 JD
 )
DR. NOE MARANDET, *et al.*, )
 )
      Defendants )

OPINION AND ORDER

Max Chizum, a prisoner confined at the Miami Correctional Facility ("MCF"), filed a complaint against the Correctional Medical Services, Medical Director Lynn Frye, Dr. Noe Marandot, and Nurse Lee Ann Ivers. The Court screened the complaint pursuant to 28 U.S.C. § 1915A, granted Chizum leave to proceed against Defendants Marandot and Ivers in their individual capacity for damages on his Eighth Amendment claim that they were deliberately indifferent to his serious medical needs by allowing his methadone prescription to expire causing him unnecessary pain and withdrawal symptoms, and dismissed all other claims and defendants.

The Defendants have moved for summary judgment, pursuant to FED. R. CIV. P. 56, on the question of whether Chizum exhausted his administrative remedies as required by 42 U.S.C. § 1997e(a); Chizum has responded. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. *Outlaw v. Newkirk*, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotation marks, ellipsis omitted).

Pursuant to 42 U.S.C. § 1997e(a), prisoners must utilize any available prison grievance procedure before they may file a § 1983 claim regarding conditions of confinement. *Booth v. Churner*, 532 U.S. 731 (2001); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 537 (7th Cir. 1999). "Exhaustion of administrative remedies, as required by § 1997e, is a condition precedent to suit. § 1997e applies to 'all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002), quoting *Porter v. Nussle*, 534 U.S. 516, 122 (2002). Although not depriving the courts of subject-matter jurisdiction, the comprehensive administrative exhaustion requirement requires dismissal of any case in which an available administrative remedy has not been exhausted. *Massey v. Wheeler,* 221 F.3d 1030, 1034 (7th Cir. 2000).

But "[p]rison officials may not take unfair advantage of the exhaustion requirement," *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006), quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and prison or jail officials may render a grievance remedy "unavailable" by the way they handle a prisoner's grievance. "Because the PLRA does not say when a process is available, the court must apply the ordinary meaning of the term." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). "When the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." *Id.* "If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust . . ." *Id.*

"The court must not proceed to render a substantive decision until it has first considered § 1997e(a). The statute gives prisons and their officials a valuable entitlement — the right *not* to face a decision on the merits — which the courts must respect if a defendant chooses to invoke it." *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d at 536 (emphasis in original). Where exhaustion has been raised as a defense, issues relating to exhaustion are to be resolved by the court before proceeding to the merits. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008), *cert denied* ___ U.S. ___, 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). Because the Defendants are the moving party, and because they bear the burden of proving the affirmative defense of lack of exhaustion, the court must "extract all reasonable inferences from the evidence in the light most favorable to" Mr. Chizum as the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). In support of their summary judgment motion, the Defendants note that this case deals with a claim that they allowed the Plaintiff's pain medication to lapse and cut him off of his pain

3

medication, and then assert "as the Affidavit of Clair Barnes shows, Mr. Chizum has not filed any grievances regarding this issue. He therefore did not complete or even attempt to utilize the grievance process with regard to the issues raised in his Complaint." [DE 20 at 6]. As advertised by the Defendants' memorandum, grievance official Clair Barnes's affidavit states flatly that "[t]he grievance records show that Max Chizum has not filed any grievances regarding medical care, or specifically, receipt of pain medication." [DE 21-2 at 2].

In the material Mr. Chizum filed in response to the Defendants' motion for summary judgment, he states that in order to even obtain a grievance form "he had to prove to a staff member (in this case the counselor Ms. Robinson) that he had exhausted the 'informal' resolution of the issues." [DE 23-1 at 2]. Mr. Chizum states under oath that he "did file a grievance contrary to the affidavit supplied by the Defendants. See exhibit marked 'C'" [DE 23-1 at 1]. Exhibit C, is a copy of a grievance, dated September 2, 2009, dealing with a lack of receipt of pain medication, which Mr. Chizum says he submitted to the grievance office [DE 23-2 at 1]. Mr. Chizum also submits a return of grievance form, dated September 15, 2009, dealing with his grievance dated September 2, 2009, and signed by Claire Retek (now Claire Barnes) [DE 22-2 at 2]. In the return of grievance form, the grievance official stated that she was returning the grievance because there was "no indication that you have attempted to resolve this grievance informally" [DE 23-2].[1] Mr. Chizum

---

[1] This is not the first case in which prison officials at the MCF have submitted an affidavit stating that a prisoner has not filed a grievance only to be confronted by a return of grievance form signed by Clair Retek establishing that the inmate had filed a grievance. *Peterson v. Miami Correctional Facility*, 3:07cv397 RL [DE 31-3 and DE 32-3 at 13]. Apparently this problem arises out of her interpretation of the Indiana Department of Correction ("IDOC") grievance policy that grievance officials are not supposed to log in, or keep copies of, grievances that are returned to an inmate to supplement or to cure deficiencies [DE 25-1 ¶ 4]. The Court notes that grievances and return of grievance forms submitted from other IDOC facilities have been logged in and retained by grievance officials, and that grievance officials from at least one other IDOC facility have testified at a hearing held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) that all grievances, including those returned to inmates for clarification or correction, are to be logged in to the system. *Smith v. Buss,* 3:07cv207 PS, [DE 84 at 56, 62-63].

also submits documents supporting the proposition that he had attempted to resolve his grievance informally before he filed his grievance and that he attempted to proceed with his grievance after it was returned [DE 23-2 at 3, 4, and 5, and DE-23-3 at 1-4].

The Grievance Mr. Chizum submitted establishes that he listed three persons he contacted to attempt to resolve his grievance informally, Ms. Robinson, his counselor, Lt. Burkhardt, a custody official, and "Malloy Medical Department." [DE 23-2]. The grievance form has a space for "staff person who responded" and "date response received," but in this case, Mr. Chizum received no responses [DE 23-2]. The form also asks the grievant to list "any response(s) or action(s) that were [taken] to resolve this issue" [DE 23-2], though there is no space provided on the form to list this information. Mr. Chizum provided that information in the body of his grievance where he stated that his requests "have been ignored and Ms. Robinson failed to resolve this matter informally. I am now suffering" [DE 23-2]. Mr. Chizum also asserts that he wished to appeal the determination by the grievance official that he had not attempted to informally resolve his problem, and attaches written requests he submitted to his counselor asking for appeal forms [DE 23-2 at 4] and a request to Clair Retek (Barnes) advising her that "I want to appeal your decision. Please send me an Appeal Form. Thank you [DE 23-2 at 5].

The Defendants filed a reply to the Plaintiff's submissions, in which they argue that the Plaintiff did not properly authenticate his exhibits, and therefore the Court should disregard them [DE 24 at 1-2]. The Court rejects that argument, concluding that the documents Mr. Chizum submitted for the Court's consideration are adequately authenticated by statements he made discussing them that were "affirmed under penalty" [DE 23-1 at 4]. Mr. Chizum also further authenticated his exhibits in a subsequent filing [DE 31-1].

5

One of the documents the Defendants assert was "not authenticated" is the return of grievance form signed by the same grievance official who later stated under oath in her affidavit that Mr. Chizum had apparently not filed a grievance dealing with the issues he wishes to litigate. If the Defendants believe Mr. Chizum fabricated the return of grievance form, the Court would be interested. But it is not interested in an argument that an authentic return of grievance form signed by a MCF official and sent by her to the Plaintiff is not properly authenticated.

Furthermore, the Defendants concede the authenticity of the return of grievance form in this case [DE 23-2 at 7]. This is established by the supplemental affidavit of Clair Barnes, in which she concedes that her earlier affidavit was in error and that, just as he argues, Mr. Chizum did in fact submit a grievance to her dealing with the incident he wishes to litigate [DE 25-1]. She states that because she did not believe that Mr. Chizum had shown that he "had attempted to resolve the grievance directly with the medical staff" [DE 25-1], she returned the grievance to him along with the return of grievance form and did not log it into the grievance system [*Id.*]. She apparently did not even keep a copy of the grievance or the return of grievance form because otherwise she would not have asserted in her first affidavit that Mr. Chizum had not filed a grievance dealing with his medical problem.[2] Ms. Barnes's affidavit does not address Mr. Chizum's contention that he asked her for an appeal form to challenge her determination that he had not attempted to informally resolve his problem but that he never received a response from her.

The return of grievance form signed by Ms. Retek/Barnes states as follows regarding when the IDOC policy justifies the return of a grievance for not having attempted to resolve his problem

---

[2] In *Jones v. White*, 3:08cv497JD, Ms. Retek/Brarnes submitted an affidavit in which she stated that "[a]t MCF, hard copies of grievances that are returned to offenders due to procedural errors are routinely placed in the Grievance Specialist's filing cabinet" DE 27-3 ¶ 6. In that case she stated that she searched that filing cabinet and found a grievance that had been returned to the plaintiff.

informally: A grievance may be returned where there is "No indication that you have attempted to resolve this grievance informally. You have to discuss the response received from all of the staff members that you contacted about your issue" [DE 23-2]. Here, Mr. Chizum does state in his grievance that he attempted to resolve his problem informally, does list the specific staff members with whom he attempted to resolve his problem, and does state the response he got from these staff members — which was that they did not respond to his efforts. Nothing in the Defendants' submissions rebut any of the evidence Mr. Chizum submitted about his attempts to informally resolve his problems before filing a formal grievance but that the officials he contacted, which included member of the medical staff, "failed to resolve this matter." [DE 23-2]. The Defendants only argue that the Court should simply ignore Mr. Chizum's evidence.

Mr. Chizum argues that the grievance official rendered the grievance remedy "unavailable" to him by the way she handled his grievance. He asserts that she improperly rejecting his grievance, on the grounds that he had not attempted to informally resolve his grievance with medical staff when, in fact, he had attempted to informally resolve his grievance with a medical staff member, as well as other staff members. Where prison officials render a grievance remedy "unavailable" by mishandling a prisoner's grievance, the inmate is excused from the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006) ("If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust."); *Kaba v. Stepp*, 458 F.3d at 684; *Dole v. Chandler*, 438 F.3d at 809.

The Defendants argue in their reply that the grievance was rejected by the grievance official and returned with instructions to take yet additional steps to informally resolve his grievance. They argue that Mr. Chizum did not talk to the additional person the grievance official referred him to and did not refile his grievance. They did not submit a copy of the IDOC grievance policy, or any portion of that policy, that would permit a facility grievance official to require additional steps to informally

7

resolve a grievance after a prisoner has already tried to unsuccessfully informally resolve his problems before filing a grievance. The Defendants do not contest that Mr. Chizum sought an appeal form but that prison officials failed to provide him with an appeal form, thus allowing review of the grievance official's determination that he had not attempted to informally resolve his problem.

The Court concludes, based on the parties' submissions in this case, that Mr. Chizum's grievance was improperly rejected by the MCF grievance official. It is undisputed that the Indiana Department of Correction policy requires that inmates attempt to informally resolve their problems before filing a formal grievance. However, the grievance form Mr. Chizum submitted, his sworn testimony, and other evidence submitted by him establish he attempted to informally resolve his grievance but that the three officials he contacted did not respond to him. Mr. Chizum states that when he was unable to informally resolve his problem he filed his grievance. The Defendants do not rebut these claims, and do not contest the documents Mr. Chizum submitted. They also do not rebut Mr. Chizum's claim that he wished to appeal the grievance official's treatment of his grievance but was not provided a form to do so.

The Seventh Circuit has noted that "if prison officials erroneously impose requirements on the grievance process, administrative remedies are not available" *Id.* citing *Kaba v. Stepp* 458 F.3d at, 684 (remedies unavailable when officials told a prisoner he had to wait until investigation was complete before filing grievance), and *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002) (as long as a grievance contains everything the policy instructed a prisoner to include, prison officials "can't complain that he failed to do more"); *Hurst v. Hantke*, No. 10-2745, slip op. at 3 (7th Cir. Feb. 10, 2011) (officials at an individual facility may not establish a secret supplement to the statewide grievance procedure requiring a prisoner to do more than is required by the state policy).

Here, the evidence submitted by the parties establishes that Mr. Chizum attempted to

informally resolve his problem, as required by the IDOC grievance policy. The evidence also establishes that his grievance contained everything the grievance form instructed prisoners to include. Accordingly, the MCF grievance official improperly rejected Mr. Chizum's grievance because there is no suggestion that the IDOC policy gave her any authority to require Mr. Chizum to make additional efforts to informally resolve his grievance. As long as a prisoner's grievance contains everything the policy "instructed him to include[] Defendants can't complain that he failed to do more." *Strong v. David*, 297 F.3d 646, 650. "[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

> If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust. Thus "[c]orrections officials concerned about maintaining order in their institutions have a reason for creating and retaining grievance systems that provide - and that are perceived as providing - a meaningful opportunity for prisoners to raise meritorious grievances."

*Kaba v. Stepp*, 458 F.3d at 678, quoting *Woodford v. Ngo*, 126 S.Ct. at 2382-83.

Indiana prison officials have every right to expect prisoners to follow the rules set forth in the Indiana Department of Correction grievance policy when filing grievances, and an inmate's failure to follow the rules will require the courts to dismiss his complaint pursuant to 42 U.S.C. § 1997e(a). On the other hand, an Indiana prisoner has every right to expect that grievance officials will follow the IDOC's rules when dealing with grievances, and grievance officials' failure to follow the rules when dealing with a prisoner's grievance will result in the courts rejecting prison officials' attempts to have that prisoner's complaint dismissed for failure to exhaust administrative remedies. Here, the prisoner followed the rules, the grievance official did not.

For the foregoing reasons, the court DENIES the Defendants' motion for summary judgment

(DE 19), GRANTS the Plaintiff's motion to deny the Defendants' motion for summary judgment (DE 23), and LIFTS the stay on discovery.

SO ORDERED.

ENTERED: February 15, 2011

/s/ JON E. DEGUILIO
Judge
United States District Court