UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MAX A. CHIZUM,                      )
                                    )
                 Plaintiff,         )
                                    )
        v.                          )        CAUSE NO. 3:09-CV-527 JD
                                    )
CORRECTIONAL MEDICAL                )
SERVICES, *et al.*,                 )
                                    )
                 Defendants.        )

OPINION AND ORDER

Max Chizum, a prisoner currently confined at the Chain O'Lakes Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 alleging that officials at the Miami Correctional Facility ("MCF") violated his federally protected rights while he was confined there. This Court screened the complaint pursuant to 28 U.S.C. § 1915A, and granted Chizum leave to proceed against Dr. Noe Marandet,[1] M.D., and Nurse Lee Ann Ivers in their individual capacities on his Eighth Amendment claim that they were deliberately indifferent to his serious medical need by causing prescriptions for pain medication to expire on or about November 15, 2007 and by discontinuing his pain medication abruptly on or about August 31, 2009, which caused him unnecessary pain and withdrawal symptoms [DE 8]. The Defendants moved for summary judgment based on 42 U.S.C. § 1997e for failure to exhaust administrative remedies, but the Court denied their motion [DE 39]. The Defendants have now moved for summary judgment on the merits [DE 91; DE 93; DE 94] and provided proper notice of the motion to the *pro se* plaintiff consistent with *Lewis v. Faulkner*, 689

---

[1] The complaint spells this Defendant's name as Marandot, but the Defendants' submissions establish that the correct spelling of his name is Marandet. Accordingly, the Court will refer to this Defendant as Dr. Marandet for the purposes of this memorandum.

F.2d 100 (7th Cir. 1982) [DE 92]. Plaintiff has responded with a motion to deny the Defendants' motion for summary judgment [DE 96] and Defendants have replied [DE 97].

In his complaint, Chizum states that in 2006 he was diagnosed with throat cancer and was treated by doctors who, after providing radiation treatment, prescribed pain medication to deal with his pain. Chizum alleges that "[t]he first incident of deliberate indifference by the defendants to the plaintiff's medical needs occurred on/or about November 15, 2007 . . . [when] . . . Dr. Noe Marandet allowed the plaintiff's prescription of methadone to expire" [DE 1 at 3]. He alleges that the non-renewal of his medication "put the plaintiff into severe withdrawals" that caused him constant pain, cold shakes that made him fall and injure himself, and tremendous weight loss (about 25 pounds in one and a half weeks). *Id.* According to the Plaintiff, the second incident occurred in late August 2009, when Nurse Ivers "abruptly cut his medication off again throwing the plaintiff into massive withdrawals again causing him indescribable pain and suffering" as before [DE 1 at 4].

In support of their motion for summary judgment, the Defendants submit their own affidavits [DE 94-3; DE 94-4], the affidavit of Clair Barnes [DE 94-8], and portions of Chizum's medical and disciplinary records [DE 94-5; DE 94-6; DE 94-7]. In support of his motion to deny the Defendants' motion for summary judgment, Chizum submits his own affidavit [DE 96 at 12-13], the affidavit of inmate Denver Claywell [DE 96 at 10-11], and portions of Chizum's disciplinary and medical records [DE 96 at 5-9, 14-17].

## Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "In other words, the record must reveal that no reasonable jury could

find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the evidence which "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). To establish a genuine issue of fact, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial, not "simply show there is some metaphysical doubt as to the material facts." *First Nat'l Bank of Cicero v. Lewco Secs. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (holding that a failure to prove one essential element necessarily renders all other facts immaterial).

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party and draw all reasonable and justifiable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). A court must avoid the temptation to "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*,

337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

## Undisputed Facts

The parties' submissions establish that in 2006 Chizum was diagnosed with cancer of the vocal cords and was treated at the Indiana University Medical Center with radiation therapy through February, 2007 [DE 1; DE 94-3 ¶ 6]. While Chizum was undergoing radiation therapy, Dr. Marandet prescribed methadone for break-through pain, in addition to vicodin, naprosyn, and ultram [DE 94-3 ¶ 6]. After he completed treatment for cancer, Chizum continued under the care of Wishard Hospital for several months and Dr. Marandet continued to prescribe pain medication, including vicodin and methadone [DE 94-3 ¶ 6; DE 94-5 at 1-3]. In July, 2007, Chizum was eating without difficulty and his throat pain was decreased, so Dr. Marandet started to wean him off the 40 mg of methadone daily by reducing his prescription by half the normal dose for one week and then by one quarter the normal dose for the following week [DE 94-3 ¶¶ 7, 10; DE 94-5 at 4-7]. Even after he was no longer receiving methadone, Chizum still had prescriptions for vicodin, naprosyn, and ultram for pain [DE 94-3 ¶ 7; DE 94-5 at 6-8].

Chizum continued to complain of pain, so on August 10 or 17, 2007,[2] Dr. Marandet prescribed morphine sulfate[3] for Chizum's ongoing throat pain [DE 94-3 ¶ 8; DE 94-5 at 9-13, 15; DE 94-7 at 18; DE 96 at 7].  Dr. Marandet also renewed Chizum's vicodin prescription for pain on August 12, 2007, which was to be used until the morphine sulfate arrived from the pharmacy [DE 94-3 ¶ 8; DE 94-5 at 14].  On September 15, 2007, Dr. Marandet again ordered vicodin for one week until morphine sulfate became available [DE 94-3 ¶ 8; DE 94-5 at 16].  Dr. Marandet examined Chizum in the Chronic Care Clinic on October 5, 2007, and noted that his pain was controlled with morphine sulfate and that he was now able to eat [DE 94-3 ¶ 9; DE 94-5 at 17-19].  Dr. Marandet also renewed Chizum's prescription for morphine sulfate until January 5, 2008 [DE 94-5, at 17-19].

Dr. Marandet examined Chizum again on October 26, 2007 [DE 94-5 at 20-24, DE 94-3 ¶ 9]. Because Chizum was concerned that he was developing a tolerance to 15 mg of morphine sulfate (twice a day), Dr. Marandet increased his dose of morphine sulfate to 30 mg (twice a day). [DE 94-5 at 20-26, DE 94-3 ¶ 9].  Chizum continued to receive morphine sulfate for pain twice a day through August 28, 2009 [DE 94-3 ¶ 12], and by July 2009, Chizum's dose had been increased to 60 mg of morphine sulfate (twice a day) [DE 94-7 at 22-24; DE 96 at 16-17].  Chizum never reported any withdrawal symptoms in November 2007 [DE 94-3 ¶ 11] and in fact had a prescription for morphine sulfate at that time [DE 94-5 at 9-10, 13, 15-17, 19; DE 96 at 9].

On August 28, 2009, Nurse Ivers wrote a conduct report against Chizum for allegedly abusing his medication in violation of disciplinary code 344 [DE 94-8 at 4].  Dr. Marandet received

_____

[2]On one record, the date of August 10 was crossed out and replaced by August 17 [DE 94-7 at 18; DE 96 at 7].

[3]Chizum asserted in his complaint that he was originally on morphine and Dr. Marandet switched him to methadone [DE 1 at 3], but his medical records reveal the opposite is true [DE 94-5 at 1-13; DE 94-7 at 16-18]. Methadone and morphine sulfate are both strong narcotics, and provide the same type of relief for severe pain [DE 94-3 ¶ 10].

Nurse Ivers's report indicating that she allegedly caught Chizum "cheeking" his medication [DE 94-3 ¶ 13; DE 94-6 at 11-12]. According to the Defendants, cheeking medication means that an inmate "pretend[s] to swallow the pill, but really hid[es] it in his cheek" [DE 94-8 ¶ 5]. However, Chizum contests Nurse Ivers' version of what occurred on August 28. Chizum and another inmate filed affidavits indicating that Nurse Ivers would not provide Chizum a cup of water and instead required Chizum to take his pill by drinking water from the water fountain [DE 96 at 10-13]. Because Chizum had throat problems, the pill became lodged in his throat and he coughed up the pill as a result. *Id*. Chizum essentially argues Nurse Ivers made up the story to get him into trouble. *Id*.

On August 31, 2009, Chizum argues that he pled guilty to a lesser charge which constituted a violation of disciplinary code 465, as reflected on his IDOC records [DE 94-8 at 5-6; DE 96 at 14-15]. Defendants do not explain why Chizum's offense was changed or what the change means. As a result of his guilty plea, Chizum received a verbal reprimand and five days of recreation restriction, but he did not lose any earned credit time *Id*.

In any event, relying on Nurse Ivers's report, Nurse Practitioner Kim Myers instructed Nurse Ivers (who did not have the authority to prescribe medication or determine how to properly wean a patient off of a medication) to only give Chizum one pill [DE 94-3 ¶ 13; 94-4 ¶¶ 6, 8], and on August 31, 2009, Dr. Marandet discontinued Chizum's prescription for morphine sulfate [DE 94-3 ¶ 13; DE 94-6 at 12]. Thus, Chizum was reduced from 120 mg of morphine sulfate daily to half the normal dose for only two days before the medication was stopped altogether [DE 94-3 ¶ 13, DE 94-4 ¶ 6; DE 94-6 at 11-12; DE 96 at 3].

On August 31, 2009, Chizum submitted a request for health care stating that he had been taken off morphine sulfate "cold turkey" and that he needed to properly detoxify [DE 94-6 at 10]. On September 14, 2009, Dr. Marandet examined Chizum, who continued to complain of withdrawal symptoms resulting from being taken off of morphine and he was prescribed vitamin B12 for nine

weeks [DE 94-3 ¶ 14; DE 94-6 at 14].  On September 24, 2009, Chizum submitted a request for health care stating that his throat hurt and that he was in constant pain and had not slept right "since being put through massive withdrawal for no good reason" [DE 94-6 at 16].  In response, Chizum was scheduled for a medical appointment on October 1, 2009, but that appointment had to be cancelled due to an emergency count in the prison [DE 94-6 at 17-18].  Dr. Marandet examined Chizum in the Chronic Care Clinic on October 5, 2009 and prescribed tramadol (ultram) for continued throat pain and referred Chizum back to the ear, nose and throat specialist [DE 94-3 ¶ 14; DE 94-6 at 19].

## Legal Analysis

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the official's actual state of mind was one of "deliberate indifference" to the deprivation.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996) *cert. denied,* 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007) ("A claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition, and 2) an official's deliberate indifference to that condition."); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).  A medical need is "serious" for Eighth Amendment purposes if it is either one that a physician has diagnosed as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated

could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez v. Peters,* 111 F.3d at 1373.

Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (citations omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 837. Medical malpractice, negligence, or even gross negligence do not constitute deliberate indifference, nor does dissatisfaction or disagreement with a course of treatment prescribed by a doctor. *Johnson v. Doughty*, 433 F.3d. 1001, 1013 (7th Cir. 2006).

Chizum alleges that he was diagnosed as having a need for pain medication throughout the period covered by his complaint, and the Defendants do not contest that he had a serious medical need [DE 93 at 8] ("Defendants do not dispute that Mr. Chizum's throat cancer and his status after cancer treatment constituted a serious medical need."). However, Defendants argue that the medical care provided Chizum was within the requisite standard of care. Chizum disagrees and alleges that the Defendants caused his pain medication to expire on two occasions, on or about November 15, 2007 and August 31, 2009 [DE 1 at 3-4], which caused him pain and other serious side effects. Subjectively, allowing a prisoner's pain medication to lapse, knowing he would experience pain and withdrawal symptoms, could show an unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.

## Claim that Dr. Marandet allowed the Plaintiff's
## medication to expire in November 2007

Chizum alleges that the first incident of deliberate indifference occurred in November 2007, when Dr. Marandet "allowed the plaintiff's prescription of methadone to expire" [DE 1 at 3]. Dr. Marandet has submitted a sworn statement that he did not allow Chizum to be without pain medication in 2007. In his affidavit, Dr. Marandet states that he "had weaned Mr. Chizum off of methadone in July, 2007 and replaced it with a prescription for morphine sulfate. Methadone and morphine sulfate are both strong narcotics; Schedule II, and provide the same type of relief for severe pain" [DE 94-3 ¶ 10]. In his own motion for summary judgment, Chizum argues that he "will show that his medication (methadone) <u>was not</u> continuous, that in fact an entire month is missing from the records and that the records show <u>stop</u> dates of July 28 (2007) with morphine being prescribed August 17, 2007" [DE 96 at 2] (emphasis in original).

Yet, the claim which the Court allowed Chizum to pursue after screening the complaint concerned the expiration of Chizum's pain medication in November 2007, not July/August 2007 [DE 1; DE 8]. Thus, Defendants did not have fair notice that Chizum was making a claim relative to the medical care he received in July/August 2007 and Chizum cannot now pursue this claim. *Anderson v. Donahoe,* 699 F.3d 989, 997 (7th Cir. 2012) ("a plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'"). For this reason, summary judgment is appropriate for any claim of deliberate indifference alleged to have occurred in July/August 2007 and Dr. Marandet is entitled to judgment as a matter of law on this claim.

Even if the Court considers the merits of Chizum's claim, summary judgment is appropriate because Chizum has presented no evidence supporting an inference of deliberate indifference in July or November 2007. Chizum's assertion that his pain medication was not continuous is belied by the

record.  Relative to November 2007, the record shows that Chizum never reported withdrawal symptoms in November 2007 and in fact he had a prescription for morphine sulfate at the time. Relative to July/August 2007, even though Dr. Marandet did not prescribe morphine until August 17, 2007, after weaning Chizum off of methadone in July 2007 for two weeks, Chizum was not left without pain medication during this period.  Dr. Marandet gave Chizum prescriptions for vicodin, naprosyn, and ultram for pain in July and August 2007 [DE 94-3 ¶ 7; DE 94-5 at 6-8].  Chizum has not submitted admissible evidence rebutting Dr. Marandet's statements and the records provided.

The Defendants' submissions establish that Dr. Marandet prescribed pain medication for Chizum for the entire period covered by this claim and that Chizum did not complain of experiencing withdrawal symptoms.  There is no evidence in the record from which a reasonable factfinder could conclude that Dr. Marandet was deliberately indifferent to Chizum's need for pain medication in either July or November 2007.  Accordingly, Dr. Marandet is entitled to summary judgment on the claim that he allowed Chizum's methadone prescription to expire in 2007.

### Claim that Chizum's pain medication was abruptly cancelled in August 2009 after Nurse Ivers accused him of misusing his medication

According to Chizum's complaint, the second incident of deliberate indifference occurred in late August 2009, when Nurse Ivers "abruptly cut his medication off again throwing the plaintiff into massive withdrawals again causing him indescribable pain and suffering" [DE 1 at 4].  The Defendants argue that Nurse Ivers did not discontinue any medication, but merely reported her observations of Chizum's alleged abuse of his medication to the nurse practitioner.  It was the nurse practitioner who then directed that Chizum's dose be lowered, until Dr. Marandet made the decision to discontinue his medication two days later.  In response, Chizum argues he did not abuse his medication, but Nurse Ivers did not report the events of August 28, 2009 accurately, and he was not

weaned off his medication but was forced into "a cold turkey detox by removal of a high dosage of narcotics" [DE 96 at 3]. He also states that he was not found guilty of misuse of medication, but instead pled guilty to a lesser charge of "breaking any institutional rule." *Id.*

The facts, as developed by the parties in their submissions, establish that Nurse Ivers did not have the authority to cut off Chizum's medication, and that she was not the person who authorized taking him off morphine sulfate, though she did submit a report that caused Dr. Marandet to take Chizum off morphine sulfate. The parties agree that Nurse Ivers was working the MCF medication administration window on August 28, 2009, when she administered 60 mg of morphine sulfate to Chizum. This medication was "hand-feed," which means Chizum had to take it at the medication window in front of a nurse and then open his mouth to show that he swallowed the medication [DE 94-4 ¶ 5]. According to the Defendants, Nurse Ivers handed Chizum his medication and he took a drink of water from the drinking fountain, but when he opened his mouth, the pill fell out onto the floor. *Id.* Nurse Ivers states that she unsuccessfully attempted to call Dr. Marandet to report that Chizum had "cheeked" his medication, and then contacted the nurse practitioner, Kim Myers, who ordered that Chizum's morphine sulfate dose be reduced until Dr. Marandet could see Chizum on Monday. *Id.* ¶ 6. When Dr. Marandet returned to the prison two days later, he discontinued Chizum's medication altogether [DE 94-3 ¶ 13; DE 94-4 ¶ 7].

As mentioned, the Plaintiff presents a different version of the events of August 28, 2009. Chizum states in his affidavit that he did not attempt to cheek his medication; rather he had problems swallowing the pill, and he ultimately "choked on the pill and coughed it onto the floor" [DE 96 at 12]. Denver Claywell's affidavit supports Chizum's version of events. In his affidavit, Claywell states:

That on August 28, 2009[,] I was witness to the following events. While standing inside the area designated for the pick-up of medication my attention was drawn to the front of the line. I heard Max Chizum say "please give me a plastic cup to get water in", this is unusual because we have a fountain to drink from. The nurse Lee Ann Ivers refused saying "just use the fountain". Mr. Chizum then said "I can't [because] I have throat cancer, please give me a cup". He was then told in a loud voice "just take the damn pill". Mr. Chizum took the medication placed it in his mouth and got a drink. Turning to the nurse he said, "it is stuck in my throat", she then ordered him to pull his cheeks out and lift up his tongue, as he attempted to comply he wretched coughing [up] the pill on to the floor. He then picked it up brushed it off and chewed it up. At that time nurse Ivers began yelling through the window at Mr. Chizum, "I got you!", "I got your ass now!" and ran out of the area where the medication is dispursed from.

[DE 96 at 10-11].

In support of the proposition that Chizum pled guilty to misuse of medication, the Defendants submit the affidavit of MCF official Clair Barnes, in which she states that "Mr. Chizum received a Notice of Disciplinary Hearing on September 2, 2009. Mr. Chizum initially plead 'not guilty' on this form, but then scratched it off and pled 'guilty' to the charge of misuse of medication." [DE 94-8 ¶ 6]. In his response to the Defendants' motion for summary judgment, Chizum states that he:

was not found guilty of misuse of medication. Defendants['] counsel claims a "scratched off" number on the Report of Disciplinary [Hearing] form as a claim by the Plaintiff of guilt. The scratched off number was due to the Plaintiff pleading guilty to a (465) (see note by screening officer Henry) i.e. Plead guilty to (465)[,] the 344 was scratched out by a DOC officer because the Plaintiff was not found guilty of a 344 misuse of medication (see Attached marked exhibit (D) [465 is breaking any institutional rule].

[DE 96 at 2-3]. Both parties have submitted copies of the screening report [DE 94-8 at 5; DE 96 at 14] and the report of disciplinary hearing [DE 94-8 at 6, DE 96 at 15], reflecting that in fact Chizum pled guilty to a 465 violation—which, according to Chizum, means that he violated an institutional rule (that is not otherwise identified in the record).

Chizum asserts that Clair Barns's affidavit is inaccurate and misleading [DE 96 at 3]. In her affidavit, Barnes states that "[a]ll facts in this affidavit are based upon my personal knowledge" [DE 94-8 ¶ 2]. But all of the facts she discusses in her affidavit are not within her personal knowledge. She was not present when Chizum was screened and, instead of testifying from personal knowledge, she is interpreting forms filled out by the screening officer in Chizum's presence. Moreover, while she suggests that Chizum pled guilty to a code 344 violation, misuse of medication, the screening report and the report of disciplinary hearing establish that this is not true.

The Defendants argue in their motion for summary judgment that "Mr. Chizum cannot argue that he did not attempt to 'cheek' his medication, because he in fact pled guilty to the charge of misuse of medication and was sanctioned by the prison" [DE 93 at 12]. The Defendants, however, do not state on what legal basis their preclusion argument rests.

The legal doctrines of *res judicata* and collateral estoppel have no application in the circumstances presented here because "[d]isciplinary panels in state prisons are not courts" and "facts found (or assumed) by a prison disciplinary board are not entitled to the presumption of correctness." *Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006). If Chizum had pled guilty to criminal charges arising from his allegedly misusing his medication, his guilty plea would preclude him from asserting his innocence while his conviction remained in effect. *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994) (If the remedy sought under § 1983 would require a finding or judgment that would render a criminal conviction or sentence invalid, a § 1983 plaintiff must first prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus"). But "[p]rison disciplinary hearings are not criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308 (1976). Moreover, *Edwards v.*

*Balisok*, 520 U.S. 641 (1997) limits only challenges to the fact or duration of a prisoner's sentence, not the conditions of his confinement. *See Hall-Bey v. Hanks*, 93 Fed.Appx. 977 (7th Cir. 2004). Thus, *Edwards v. Balisok* does not apply here because Chizum did not lose earned credit time as a result of pleading guilty to a code 465 violation [DE 94-8 at 6]. Accordingly, without Defendants having developed a proper legal basis for giving preclusive effect to the disciplinary determination, this Court rejects the Defendants' argument that Chizum is precluded from making the argument that he did not cheek his medication because he plead guilty to a code 465 offense.

In ruling on a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. The Plaintiff has submitted a sworn statement denying that he "cheeked" his medication on August 28, 2009, and asserts he choked on the pill because Nurse Ivers refused to let him drink from a cup. Chizum's version of events is supported by the affidavit of Denver Claywell. Giving the Plaintiff the benefit of the inferences to which he is entitled, this Court must conclude that there is a disputed issue of fact as to whether he actually attempted to cheek his medication.

The Eighth Amendment has an subjective component. *Farmer v. Brennan*, 511 U.S. at 834. Thus if Nurse Ivers was honestly mistaken when she reported that Chizum had attempted to "cheek" his medication, then she was not deliberately indifferent to his serious medical needs. But if Nurse Ivers knew that Chizum did not actually attempt to "cheek" his medication, a reasonable factfinder could conclude that she was deliberately indifferent to his serious medical needs if she reported that he did, knowing it was possible Chizum's prescription for pain medication would be terminated. If a factfinder credited Chizum and Claywell's sworn statements, the factfinder could conclude that Nurse Ivers did not have a good faith belief that Chizum had attempted to cheek his medication, and that her report to Dr. Marandet was knowingly false despite the possible consequences. Thus,

Nurse Ivers could be found liable under the Eighth Amendment given the inference afforded Chizum at the summary judgment stage that she knew of and disregarded an excessive risk to his health. *See Farmer v. Brennan*, 511 U.S. at 837.

In his affidavit, Denver Claywell states that even though Chizum asked for a cup and told Nurse Ivers that he couldn't use the water fountain because he had throat cancer, Nurse Ivers told him to "just take the damn pill" [DE 96 at 10]. After he put the pill in his mouth and took a drink from the fountain, Claywell states that Chizum told Nurse Ivers "it is stuck in my throat" and that nurse Ivers then "ordered him to pull his cheeks out and lift up his tongue, as he attempted to comply he wretched coughing up the pill on to the floor. He then picked it up brushed it off and chewed it up. At that time nurse Ivers began yelling through the window at Mr. Chizum, 'I got you!', 'I got your ass now!' and ran out of the area" [*Id.*].

For Dr. Marandet's part, he states that "Mr. Chizum should not have experienced withdrawal effects because he was tapered down in dosage for two days" [DE 94-3 ¶ 13]. But stating that Chizum *should* not have experienced withdrawal symptoms from being taken off morphine sulfate after being weaned off of it for only two days does not mean that he *could* not possibly have suffered withdrawal symptoms or that he did not suffer any withdrawal symptoms. In fact, Chizum states that he suffered withdrawal symptoms and the Defendants' submissions establish that he complained of withdrawal symptoms at the time [DE 94-3 ¶ 14; DE 94-6 at 10, 16]. Moreover, the Defendants' submissions establish that when Dr. Marandet previously weaned Chizum off of a pain medication (40 mg methadone daily) in July 2007, he did so over a two week period [DE 94-3 ¶¶ 7, 10; DE 94-5 at 4-7]. And yet, Dr. Marandet does not explain how two days was expected to be a sufficient weaning period when Chizum was on 120 mg of morphine sulfate daily and had been taking morphine sulfate for two years. Nor do the Defendants deny that Chizum still needed pain

medication and that he suffered pain as a result of being taken abruptly off of morphine sulfate. In addition, Defendants do not provide evidence to establish that even if Chizum cheeked his medication on this one occasion, it was proper protocol to eliminate his pain medication altogether without a weaning period. Therefore, even if Dr. Marandet terminated Chizum's prescription for pain medicine because he truly believed that Chizum violated jail policy, a jury could infer that Dr. Marandet discontinued the medicine with deliberate indifference by not weaning Chizum off of the drug and intentionally allowing Chizum to suffer from the effects of his withdrawal. *See e.g. Davis v. Carter*, 452 F.3d 686 (7th Cir. 2006) (plaintiff was on a methadone maintenance program when he reported to jail to serve his sentence and was denied methadone, ultimately plaintiff died from a cerebral aneurysm and it was determined that a jury could find deliberate indifference); *Foelker v. Outagamie County*, 394 F.3d 510 (7th Cir. 2005) (holding that a jury could find an Eighth Amendment violation where plaintiff was on a methadone maintenance program for five weeks when he turned himself in and suffered severe withdrawal only three days later, including confusion, disorientation, and delusions); *McNamara v. Lantz*, No. 3:06-CV-93 (PCD), 2008 WL 4277790 (D. Conn. Sept. 16, 2008) (collecting cases).

Accordingly, Nurse Ivers and Dr. Marandet are not entitled to summary judgment on the claim that their actions resulted in Chizum being abruptly taken off of pain medication on August 30, 2009 knowing that he might suffer severe withdrawal without proper weaning from the pain medicine.

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Defendants' motion for summary judgment [DE 91] and the Plaintiff's motion to deny the Defendants' motion for summary judgment [DE 96]. Specifically, the Court GRANTS Defendants summary judgment on Plaintiff's claim concerning the expiration of his pain medicine in 2007, but

DENIES Defendants summary judgment on Plaintiff's claim against Defendant Noe Marandet, M.D. and Defendant Lee Ann Ivers that they were deliberately indifferent by causing the abrupt discontinuance of his pain medicine in August 2009.

SO ORDERED.

ENTERED:  May 22, 2013

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court